IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| UNITED FINANCIAL CASUALTY COMPANY, a foreign insurer,<br><br>Plaintiff,<br><br>v.<br><br>CHRISTENSEN, INC. GENERAL CONTRACTOR, a Washington Corporation; KEVIN CHRISTENSEN and BARBARA CHRISTENSEN, husband and wife, and the marital community thereof; JOHN R. CLARK and "JANE DOE" CLARK, husband and wife, and the marital community thereof; LEETTA IRELAND, an individual person; HARTFORD CASUALTY INSURANCE COMPANY, a foreign insurer;<br><br>Defendants. | No.<br><br>**COMPLAINT FOR DECLARATORY RELIEF** |

### I.   NATURE OF THE ACTION

1.   This is an insurance coverage action seeking declaratory relief pursuant to 28 U.S.C. §§ 2201 and 2202. United Financial Casualty Company (hereinafter "UFCC") seeks a determination that it has no duty to defend or indemnify Christensen, Inc., General Contractor (hereinafter "Christensen") or John R. Clark (hereinafter "Clark") under a policy of insurance

COMPLAINT FOR DECLARATORY RELIEF – 1

issued to Christensen by UFCC with respect to claims brought against both in two actions described in detail below.

## II.   PARTIES

2. Plaintiff UFCC is a foreign insurance company organized under the laws of the State of Ohio with its principal place of business located in the State of Ohio.

3. Christensen is a corporation organized under the laws of the State of Washington with a principal place of business located in Thurston County, Washington.

4. Kevin and Barbara Christensen are residents and are citizens of the State of Washington.

5. Kevin Christensen is the sole shareholder of Christensen.

6. Clark, at all relevant times, was an employee of Christensen.

7. Clark is a resident of Thurston County, Washington and is a citizen of the State of Washington.

8. Leetta Ireland (hereinafter "Ireland") is a resident of Thurston County, Washington and a citizen of the State of Washington.

9. Hartford Casualty Insurance Company (hereinafter "Hartford") is an insurance company organized under the laws in the State of Indiana with its principal place of business located in Hartford, Connecticut.

## III.   JURISDICTION AND VENUE

10. This Court has jurisdiction over this claim pursuant to 28 U.S.C. §1332 as the amount in controversy exceeds $75,000.00, exclusive of interest and costs, and diversity amongst the parties is complete.

11. Venue is proper with this Court pursuant to 28 U.S.C. §1391 as this case involves claims for insurance coverage stemming from alleged losses which occurred in Mason County, Washington.

12. Venue is also proper with this Court pursuant to 28 U.S.C. §1391 as the individual defendants and parties involved in the alleged losses resided in this judicial district.

## IV.   FACTS

**A. <u>Facts of the Motor Vehicle Accident</u>**

13. On April 20, 2016, Clark was commuting home after his workday ended in a 1986 Chevrolet C2500 (hereinafter, the "'86 Chevy") on highway 3 near Shelton, Washington. At that time and place, Clark rear ended Ireland, who was stopped for traffic while she waited to make a left-hand turn.

14. Ireland alleges she sustained injuries and property damage as a result of the motor vehicle accident.

15. At the time of the accident, Clark possessed an auto insurance policy issued to him by non-party Farmers Insurance Company of Washington (hereinafter, "Farmers"), which included liability coverage.

16. Clark's policy with Farmers covered the '86 Chevy.

17. At the time of the accident, Christensen was Clark's employer.

18. Upon information and belief, Clark was prohibited from driving with regard to his employment with Christensen.

19. At the time of the accident, a trailer owned by Christensen was attached to Clark's '86 Chevy.

20. At the time of the accident, Ireland was insured by Hartford.

21. Hartford alleges it paid Ireland money damages for her personal injuries and property damage.

22. Hartford alleges it bought out Ireland's claim under the Hamilton Doctrine and initiated the Mason County Lawsuit.

**1) The Mason County Lawsuit**

23. The lawsuit, entitled *Hartford Casualty Insurance Company as subrogee of Leetta Ireland v. Christensen, Inc, General Contractor; John Clark.*, was brought by Hartford in Mason County District Court, Case No. 18CV1362 (hereinafter the "Mason County Lawsuit").

24. Hartford alleges that Clark was negligent in causing the accident that resulted in Ireland's personal injuries and property damage.

25. Hartford alleges that Clark was acting within the scope of his employment with Christensen at the time of the accident.

26. Hartford seeks recovery of the money it paid out to Ireland for personal injury and property damage based on the doctrine of subrogation.

27. A claim has been tendered on behalf of Christensen and Clark to UFCC seeking defense and indemnity coverage arising out of the allegations asserted by Hartford in the Mason County Lawsuit.

28. UFCC is defending Christensen and Clark in the Mason County Lawsuit subject to an express reservation of rights.

**2) The Pierce County Lawsuit**

29. The lawsuit, entitled *Ireland v. Clark et al.*, was brought by Ireland in Pierce County Superior Court, Case No. 19-2-07069-8 (hereinafter the "Pierce County Lawsuit"), and

1 named Clark, "Jane Doe" Clark, husband and wife, Christensen, Kevin Christensen and
2 Barbara Christensen, husband and wife, and any other shareholders of Christensen as the
3 Defendants.

4     30.    Ireland alleges that the motor vehicle accident caused by Clark's negligence was
5 within the scope and furtherance of his employment with Christensen, and that Christensen is
6 liable for the negligent acts of Clark under the doctrine of respondeat superior and/or agency.

7     31.    Ireland seeks damages for her personal injuries caused by the April 20, 2016
8 motor vehicle accident.

9     32.    UFCC is defending Christensen and Clark in the Pierce County Lawsuit subject
10 to an express reservation of rights.

11     **B.  The UFCC Policy**

12     33.    UFCC issued Commercial Auto Insurance Policy no. 02840926-0 to Christensen
13 with a policy period of January 18, 2016 to January 18, 2017, (hereinafter "the UFCC Policy").

14     34.    The UFCC Policy lists Christensen as the named "insured."

15     35.    The only auto listed on the declaration page of the UFCC Policy is a 2003 GMC
16 C7C (VIN: 1GDK7E1C13F521896) (hereinafter "2003 GMC").

17     36.    The '86 Chevy is not listed on the UFCC Policy declaration page.

18     37.    The trailer that was attached to the '86 Chevy during the April 20, 2016 motor
19 vehicle accident is not listed on the UFCC Policy declaration page.

20     38.    The insuring agreement for liability coverage in the UFCC Policy contains the
21 following language in pertinent parts:

22
23                             **PART I - LIABILITY TO OTHERS**
                              **Insuring Agreement- Liability To Others**

> Subject to the Limits of Liability, if **you** pay the premium for liability coverage for the **insured auto** involved, **we** will pay damages, other than punitive or exemplary damages, for **bodily injury**, **property damage**, and **covered pollution cost or expense**, for which an **insured** becomes legally responsible because of an **accident** arising out of the ownership, maintenance or use of that **insured auto**. However, **we** will only pay for the **covered pollution cost or expense** if the same **accident** also caused **bodily injury** or **property damage** to which this insurance applies.
>
> **We** will settle or defend, at **our** option, any claim or lawsuit for damages covered by this Part I. **We** have no duty to settle or defend any lawsuit, or make any additional payments, after the Limit of Liability for this coverage has been exhausted by payment of judgments or settlements.
>
> . . .
>
> **ADDITIONAL DEFINITIONS USED IN THIS PART ONLY**
>
> **A.** When used in Part I - Liability To Others, **insured** means:
>
> 1. **You** with respect to an **insured auto**.
>
> 2. Any person while using, with **your** permission, and within the scope of that permission, an **insured auto you** own, hire or borrow except:
>
>    a) A person while he or she is working in a business of selling, leasing, repairing, parking, storing, servicing, delivering or testing **autos**, unless that business is **yours** and it was so represented in **your** application.
>
>    b) A person, other than one of **your** employees, partners (if **you** are a partnership), members (if **you** are a limited liability company), officers or directors (if **you** are a corporation), or a lessee or borrower or any of their employees, while he or she is moving property to or from an **insured auto**.
>
>    c) The owner or anyone else from whom the **insured auto** is leased, hired, or borrowed unless the **insured auto** is a **trailer**

        connected to a power unit that is an **insured auto**. However, this exception does not apply if the **insured auto** is specifically described on the **declarations page.**

        For purposes of this subsection A.2, an **insured auto you** own includes any **auto** specifically described on the **declarations page**.

    3.    Any other person or organization, but only with respect to the legal liability of that person or organization for acts or omissions of any person otherwise covered under this Part I - Liability To Others.

If **we** make a filing or submit a certificate of insurance on **your** behalf with a regulatory or governmental agency, the term "**insured**" as used in such filing or certificate, and in any related endorsement, refers only to the person or organization named on such filing, certificate or endorsement.

  **B.**    When used in Part I - Liability To Others, **insured auto** also includes:

    1.    **Trailers** designed primarily for travel on public roads, while connected to **your insured auto** that is a power unit;

    2.    **Mobile equipment** while being carried or towed by an **insured auto**; and

    3.    Any **temporary substitute auto**.

Policy No. 02840926-0, Form 6912 (06/10) at 6.

39.    The following general definitions also apply to the above referenced provisions:

**GENERAL DEFINITIONS**

. . .

5.    "**Insured auto**" or "**your insured auto**" means:

    a.    Any **auto** specifically described on the **declarations page**; or

COMPLAINT FOR DECLARATORY RELIEF – 7

Lether & Associates PLLC.
1848 Westlake Avenue N, Suite 100
Seattle, WA 98109
P: (206) 467-5444  F: (206) 467-5544

        b.      An additional **auto** for Part I - Liability To Others and/or Part II - Damage To Your Auto on the date **you** become the owner if:

            (i)    **you** acquire the **auto** during the policy period shown on the **declarations page**;

            (ii)   **we** insure all **autos** owned by **you** that are used in **your** business;

            (iii)  no other insurance policy provides coverage for that **auto**; and

            (iv)  **you** tell **us** within 30 days after **you** acquire it that **you** want **us** to cover it for that coverage.

If **you** add any coverage, increase **your** limits or make any other changes to this policy during the 30 day period after **you** acquire an additional **auto**, these changes to **your** policy will not become effective until after **you** ask **us** to add the coverage, increase **your** limits or make such changes for the additional **auto**. **We** may charge premium for the additional **auto** from the date **you** acquire the **auto**.

With respect to Part I - Liability To Others, if **we** provide coverage for an additionally acquired **auto** in accordance with this paragraph b., **we** will provide the same coverage for such additional **auto** as **we** provide for any **auto** shown on the **declarations page**.

        c.      Any replacement **auto** on the date **you** become the owner if:

            (i)    **you** acquire the **auto** during the policy period shown on the declarations **page**;

            (ii)   the **auto** that **you** acquire replaces one specifically described on the **declarations page** due to termination of your ownership of the replaced auto or due to mechanical breakdown of, deterioration of, or **loss** to the replaced **auto** that renders it permanently inoperable; and

            (iii)  no other insurance policy provides coverage for that **auto**.

Policy No. 02840926-0, Form 6912 (06/10) at 2-3.

COMPLAINT FOR DECLARATORY RELIEF – 8

14. "**Temporary substitute auto**" means any **auto you** do not own while used with the permission of its owner as a temporary substitute for an **insured auto** that has been withdrawn from normal use due to breakdown, repair, servicing, loss or destruction.

Policy No. 02840926-0, Form 6912 (06/10) at 5.

17. "**You**", "**your**" and "**yours**" refer to the named insured shown on the **declarations page**.

Policy No. 02840926-0, Form 6912 (06/10) at 5.

40. The UFCC policy contains the following provisions regarding the potential presence of other insurance covering a claim to liability coverage:

**GENERAL PROVISIONS**

3. **Other Insurance**

   a. For any insured auto that is specifically described on the declarations page, this policy provides primary coverage. For an insured auto which is not specifically described on the declarations page, coverage under this policy will be excess over any and all other valid and collectible insurance, whether primary, excess or contingent. However, if the insured auto which is specifically described on the declarations page is a trailer, this policy will be primary only if the trailer is attached to an insured auto that is a power unit you own and is specifically described on the declarations page, and excess in all other circumstances.

   b. If coverage under more than one policy applies on the same basis, either excess or primary, we will pay only our proportionate share. Our proportionate share is the proportion that the Limit of Liability of this policy bears to the total of the limits of all the Coverage Forms and policies covering on the same basis.

Policy No. 02840926-0, Form 6912 (06/10) at 22.

**V.   THERE IS AN ACTUAL AND JUSTICABLE CONTROVERSEY AS TO UFCC's COVERAGE OBLIGATIONS**

41.     The UFCC Policy provides liability coverage for damages, other than punitive or exemplary damages, for bodily injury for which an "insured" becomes legally responsible because of an accident arising out of the ownership, maintenance or use of an "insured auto."

42.     There is an actual and justiciable controversy as whether any of the of the claims asserted in the underlying lawsuits are for damages due to an accident involving an "insured auto" as defined by the UFCC policy.

43.     The UFCC Policy defines "insured auto" as an auto specifically described on the declarations page, an "additional auto," a "replacement auto," and a "temporary substitute auto." The UFCC Policy provides that "insured auto" also includes trailers when they are connected to an "insured auto," mobile equipment that is being carried or towed by an "insured auto", or a "temporary substitute auto."

44.     The only auto listed on the UFCC Policy is the 2003 GMC.

45.     The UFCC defines "additional auto" as an auto acquired during the policy period, the policy covers every auto owned by the "insured" or "insured's business," no other insurance policy covers the auto, and the "insured" notifies UFCC within thirty days of acquiring the auto that it wants the new auto to be included under the coverage.

46.     There is an actual and justiciable controversy as to whether the '86 Chevy qualifies as an "additional auto."

47.     The UFCC Policy defines a "replacement auto" as an auto that the "insured" acquires during the policy period, that replaces the auto listed on the declaration page due to breakdown or loss that renders the listed auto inoperable, and is an auto that is not covered by any other insurance policy.

48. There is an actual and justiciable controversy as to whether the '86 Chevy qualifies as a "replacement auto."

49. The UFCC Policy defines "temporary substitute auto" as any auto not owned by the "insured" who is using it with permission in place of an "insured auto" that is taken out of normal use due to breakdown, repair, servicing, loss or destruction.

50. There is an actual and justiciable controversy as to whether the '86 Chevy qualifies as a "temporary substitute auto."

51. There is an actual and justiciable controversy as to whether the trailer qualifies as an "insured auto."

52. There is an actual and justiciable controversy as to whether the trailer was attached to an "insured auto" at the April 20, 2016 motor vehicle accident.

53. The UFCC Policy defines an "insured" as "You," referring to Christensen as the named "insured", with respect to an "insured auto."

54. There is an actual and justiciable controversy regarding whether Christensen is an "insured" for the April 20, 2016 motor vehicle accident.

55. The UFCC Policy defines an "insured" as any person using an "insured auto" with permission and acting within the scope of that permission, or a person who is vicariously liable for the conduct of an "insured."

56. There is an actual and justiciable controversy as to whether Clark is an "insured" while driving the '86 Chevy according to the terms as defined by The UFCC Policy.

57. There is an actual and justiciable controversy as to whether Clark had Christensen's permission and was acting within the scope of that permission.

58.     There is an actual and justiciable controversy as to whether Christensen is subject to vicarious liability for conduct of Clark at the time of the April 20, 2016 motor vehicle accident.

59.     The UFCC Policy provides that its insurance is excess when an auto is insured under another insurance policy.

60.     Clark is insured under the Farmers policy.

61.     There is an actual and justiciable controversy as to whether UFCC is excess of Farmers, if UFCC provides any coverage at all.

62.     In addition to the provisions cited above, UFCC pleads all other conditions, terms, provisions, limitations, definitions, and exclusions of the UFCC Policy, which also may be found to be applicable to UFCC's investigation and defense of these claims, and UFCC reserves the right to amend its Complaint for Declaratory Judgment as additional and/or more specific information becomes available.

63.     There is an actual and justiciable controversy as to whether there is coverage available to Clark and Christensen under the UFCC policy.

64.     Pursuant to 28 U.S.C. §§ 2201 and 2202, UFCC seeks a judicial declaration of its rights and duties under the UFCC Policy.

## VI.     CLAIM FOR DECLARATORY JUDGMENT

65.     Plaintiff UFCC is entitled to Declaratory Judgment in its favor, specifically including a judicial determination that it does not owe any defense or indemnity coverage obligations to Christensen and Clark under the policies of insurance issued to Christensen for the claims asserted in the underlying lawsuits (the Mason County Lawsuit and the Pierce County Lawsuit) that are the subject of this lawsuit.

## VII.   REQUEST FOR RELIEF

WHEREFORE, UFCC, having specifically alleged the foregoing, now requests for the following relief:

66. For a determination of the rights and obligations of the parties hereto under the UFCC Policy.

67. For a declaration that UFCC does not owe any coverage to Clark under the UFCC Policy for the subject accident.

68. For all interest as allowed by applicable law.

69. For attorney's fees and costs allowed by applicable statute and law.

70. For other and further relief as the Court deems just and equitable.

DATED this 18th day of July, 2019.

LETHER & ASSOCIATES, PLLC

*/s/ Thomas Lether*
Thomas Lether, WSBA #18089
*/s/ Eric J. Neal*
Eric J. Neal, WSBA #31863
1848 Westlake Avenue N, Suite 100
Seattle, WA 98109
P: (206) 467-5444/F: (206) 467-5544
eneal@letherlaw.com
tlether@letherlaw.com
*Attorneys for Plaintiff United Financial Casualty Insurance Company*