HONORABLE RONALD B. LEIGHTON

1

2

3

4

5

6

7    UNITED STATES DISTRICT COURT
     WESTERN DISTRICT OF WASHINGTON
     AT TACOMA

8

| | |
|---|---|
| UNITED FINANCIAL CASUALTY COMPANY, a foreign insurer, | CASE NO. 3:19-cv-05658-RBL |
| Plaintiff, | ORDER ON PLAINTIFF UNITED FINANCIAL CASUALTY COMPANY'S MOTION FOR SUMMARY JUDGMENT |
| v. | |
| CHRISTENSEN, INC. GENERAL CONTRACTOR, a Washington Corporation; et al., | |
| Defendant. | |

15       THIS MATTER is before the Court on Plaintiff United Financial Casualty Company's

16  (UFCC) Motion for Summary Judgment. Dkt. # 31. UFCC initiated this action on July 18, 2019

17  to obtain a judicial determination of its defense and indemnity obligations in the underlying case

18  of *Ireland v. Christensen, Inc., General Contractor, et al.*, Pierce County Superior Court Cause

19  No. 19-2-07069-8.[1]

20

21

22  [1] The original claims against Christensen arising from the subject automobile accident were filed
    in a subrogation action entitled *Hartford Casualty Insurance Company as subrogee of Leetta*
23  *Ireland v. Christensen, Inc, General Contractor; John Clark., et al*., Mason County District
    Court Case No. 18CV1362. However, that action was dismissed upon Ireland's filing of the
24  Underlying Lawsuit and is no longer at issue.

1    That case was filed after John R. Clark, an employee of Defendant Christensen, Inc.

2    General Contractor,[2] was involved in an auto accident with Leetta Ireland on April 20, 2016.

3    After Ireland sued Christensen along with Clark, Christensen tendered the claim to UFCC, which

4    agreed to provide defense under a reservation of rights. UFCC now asks the Court to hold that it

5    owes no defense or indemnity obligations under the Policy because Clark was not driving an

6    "insured auto" at the time of the accident.

7        Summary judgment is proper "if the pleadings, the discovery and disclosure materials on

8    file, and any affidavits show that there is no genuine issue as to any material fact and that the

9    movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In determining whether

10   an issue of fact exists, the Court must view all evidence in the light most favorable to the

11   nonmoving party and draw all reasonable inferences in that party's favor. *Anderson Liberty*

12   *Lobby, Inc.*, 477 U.S. 242, 248-50 (1986) (emphasis added); *Bagdadi v. Nazar*, 84 F.3d 1194,

13   1197 (9th Cir. 1996). A genuine issue of material fact exists where there is sufficient evidence

14   for a reasonable factfinder to find for the nonmoving party. *Anderson*, 477 U.S. at 248. The

15   moving party bears the initial burden of showing that there is no evidence which supports an

16   element essential to the nonmovant's claim. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

17   Once the movant has met this burden, the nonmoving party then must show that there is a

18   genuine issue for trial. *Anderson*, 477 U.S. at 250.

19       "Interpretation of an insurance contract is a question of law." *Woo v. Fireman's Fund Ins.*

20   *Co.*, 161 Wash. 2d 43, 52 (2007). Terms are to be interpreted as the "average person purchasing

21   insurance" would understand them. *Id*. While the insured has the burden of proving that claims

22

23   _____
     [2] Although Kevin and Barbara Christensen are also Defendants in this matter, Christensen, Inc.
     was the UFCC policyholder and is the focus of this case. Consequently, the Court's use of the
24   term "Christensen" refers to the company, not the individuals.

1    fall within a grant of coverage, the insurer has the burden of proving that an exclusion bars

2    coverage. *See McDonald v. State Farm Fire & Cas. Co.*, 119 Wn.2d 724, 731 (1992).

3         An insurer's duty to defend is broader than its duty to indemnify, which "exists only if

4    the policy *actually covers* the insured's liability." *Woo*, 161 Wash. 2d at 53. In contrast, the duty

5    to defend is triggered "if the insurance policy *conceivably covers* the allegations in the

6    complaint." *Id*. This determination is made by considering "the four corners of the complaint and

7    the four corners of the insurance policy." *Webb v. USAA Cas. Ins. Co.*, 457 P.3d 1258, 1265

8    (Wash. Ct. App. 2020) (quoting *Expedia, Inc. v. Steadfast Ins. Co.*, 180 Wash.2d 793, 806

9    (2014)). "If the complaint is ambiguous, it must be construed liberally in favor of triggering a

10   duty to defend." *Id*. at 1266.

11        "When the facts or the law affecting coverage is disputed, the insurer may defend under a

12   reservation of rights until coverage is settled in a declaratory action." *Am. Best Food, Inc. v. Alea*

13   *London, Ltd.*, 168 Wash. 2d 398, 405 (2010). The insured "must defend until it is clear that the

14   claim is not covered." *Id*. Under this approach, "the insured receives the defense promised and, if

15   coverage is found not to exist, the insurer will not be obligated to pay." *Id*. (quoting *Truck Ins.*

16   *Exch. v. Vanport Homes, Inc.*, 147 Wash. 2d 751, 761 (2002)). However, unless the policy

17   provides for reimbursement of defense costs, the insurer cannot recover money spent on defense

18   prior to a judicial declaration of non-coverage. *Nat'l Sur. Corp. v. Immunex Corp.*, 162 Wash.

19   App. 762, 778 (2011), *aff'd*, 176 Wash. 2d 872 (2013).

20        Ireland's original complaint is short and conclusory, but it does allege that Clark

21   negligently caused the auto accident while acting within the scope of his employment with

22   Christensen. Dkt. # 34-2 at 3. The amended complaint adds an allegation that Christensen was

23   liable for the accident because it negligently trained and/or supervised Clark. Dkt. # 34-3 at 3.

24

ORDER ON PLAINTIFF UNITED FINANCIAL
CASUALTY COMPANY'S MOTION FOR
SUMMARY JUDGMENT - 3

1    Ireland makes no allegations about the type or ownership of the vehicle Clark was driving at the

2    time.

3            As for the Policy, Christensen's Policy with UFCC contains the following coverage

4    provision:

5        Subject to the Limits of Liability, if you pay the premium for liability coverage
         for the insured auto involved, we will pay damages, other than punitive or
6        exemplary damages, for bodily injury, property damage, and covered pollution
         cost or expense, for which an insured becomes legally responsible because of an
7        accident arising out of the ownership, maintenance or use of that insured auto.
         However, we will only pay for the covered pollution cost or expense if the same
8        accident also caused bodily injury or property damage to which this insurance
         applies.
9
         We will settle or defend, at our option, any claim or lawsuit for damages covered
10       by this Part I. We have no duty to settle or defend any lawsuit, or make any
         additional payments, after the Limit of Liability for this coverage has been
11       exhausted by payment of judgments or settlements.

12   Dkt. # 34-4 at 6. The Policy defines "insured auto" or "your insured auto" as:

13       (1) Any auto specifically described on the declarations page; or

14       (2) An additional auto for Part I - Liability To Others and/or Part II - Damage To Your
             Auto on the date you become the owner if:
15           a.   you acquire the auto during the policy period shown on the declarations page;
             b.   we insure all autos owned by you that are used in your business;
16           c.   no other insurance policy provides coverage for that auto; and
             d.   you tell us within 30 days after you acquire it that you want us to cover it for
17                that coverage.

18       (3) Any replacement auto on the date you become the owner if:
             a.   you acquire the auto during the policy period shown on the declarations page;
19           b.   the auto that you acquire replaces one specifically described on the
                  declarations page due to termination of your ownership of the replaced auto or
20                due to mechanical breakdown of, deterioration of, or loss to the replaced auto
                  that renders it permanently inoperable; and
21           c.   no other insurance policy provides coverage for that auto.

22       (4) Trailers designed primarily for travel on public roads, while connected to your
             insured auto that is a power unit;

23

24

ORDER ON PLAINTIFF UNITED FINANCIAL
CASUALTY COMPANY'S MOTION FOR
SUMMARY JUDGMENT - 4

(5) Mobile equipment while being carried or towed by an insured auto; and

(6) Any temporary substitute auto, . . . [which] means any auto you do not own while used with the permission of its owner as a temporary substitute for an insured auto that has been withdrawn from normal use due to breakdown, repair, servicing, loss or destruction.

Dkt. # 34-4 at 2-3, 5, & 7. The only auto listed on the Policy's declarations page is a 2003 GMC C7C, VIN No. 1GDK7E1C13F521896. *Id*. at 2. The "Related Driver" is Clark. *Id*. at 1.

UFCC was right to defend Christensen under a reservation of rights. Ireland's allegation that Clark was acting as a Christensen employee when the accident occurred and her failure to describe the vehicle made it conceivable that Clark was driving an "insured auto." Because UFCC was not entitled to consider extrinsic facts when Ireland sued, the complaint triggered UFCC's duty to defend.

However, further investigation reveals that Clark's accident with Ireland was not covered under the Policy. Clark was driving a 1986 Chevrolet C2500 pick-up truck, VIN No. 2GCEC14H9G1211179, and towing a Christensen-owned trailer when he collided with Ireland. Police Report, Dkt. # 34-1; Christensen (30)(b)(6) Dep., Dkt. # 35-2, at 29. Neither was included on the Policy's declarations page. The vehicles also do not meet any other definition of an "insured auto." The 1986 Chevrolet was not an "additional auto" or "replacement auto" because it was not owned by Christensen (among other reasons). Christensen (30)(b)(6) Dep. at 24. It was also not a "temporary substitute auto" because Clark was not driving it to replace an inoperable Christensen vehicle. *Id*. at 25. And because the 1986 Chevrolet was not an "insured auto," the Christensen-owned trailer was also not covered because it was not being towed by an "insured auto." There was therefore no coverage for the accident.

Christensen does not contest that there is no coverage under the Policy's language. However, Christensen does argue that its insurance broker, Nicholson and Associates,

1    represented that the UFCC Policy would cover Clark whenever he was pulling a trailer.

2    Opposition, Dkt. # 37, at 2. According to Christensen, these representations are binding on

3    UFCC and supersede the Policy language under Washington law. *See T-Mobile USA Inc. v.*

4    *Selective Ins. Co. of Am.*, 194 Wash. 2d 413, 420 (2019) ("[A]n insurance company is bound by

5    all acts, contracts, or representations of its agent, whether general or special, which are within the

6    scope of [the agent's] real or apparent authority . . . .").

7         Christensen's argument misconstrues both law and facts. First, *T-Mobile* does not hold

8    that *any* representation by an insurance broker magically binds the insurance company. Rather,

9    the Ninth Circuit had already held that the defendant was "an insurance company, that it had an

10    agent, and that the agent acted with apparent authority when it issued the certificate to T-Mobile

11    USA" that made the disputed representations. *Id*. at 420-21. Here, Christensen presents no

12    evidence or arguments that Nicholson had authority to make binding representations about the

13    UFCC Policy.

14         Second, even if Nicholson had such authority, there is no evidence of a representation

15    that Clark was covered when pulling a trailer using *any* vehicle at all. In fact, according to Kevin

16    Christensen's declaration, "Nicholson selected the coverage and told [Christensen] to not allow

17    Mr. Clark to drive vehicles other than the 2003 GMC." Dkt. # 38 at 3. The emails between

18    Christensen and Nicholson also do not represent that Clark was covered while pulling trailers

19    with his personal vehicle. Instead, Christensen presents an exchange from March 15, 2016

20    discussing Clark's recent traffic citation and inability to drive the 2003 GMC. Dkt. # 39, Ex. B.

21    Christensen's office administrator states, "We don't want to suspend the coverage for the truck,

22    just the ability for Johnny [Clark] to drive it, as HE can't." *Id*. At no point does Nicholson make

23

24

1    any representations about Clark's unconditional coverage when pulling a trailer. Indeed, these

2    emails reinforce the idea that the UFCC Policy only covers Clark while driving the 2003 GMC.

3         UFCC's Motion is for Summary Judgment is GRANTED. UFCC has no indemnification

4    or defense obligations to Christensen or Clark under its Policy in the underlying lawsuit filed by

5    Ireland.

6         IT IS SO ORDERED.

7

8         Dated this 21st day of July, 2020.

9

10

        Ronald B. Leighton
11        United States District Judge

12

13

14

15

16

17

18

19

20

21

22

23

24

ORDER ON PLAINTIFF UNITED FINANCIAL
CASUALTY COMPANY'S MOTION FOR
SUMMARY JUDGMENT - 7