1

2

3

4

5

6

7

8

9

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

10

11

12

13

14

15

16

17

18

19

20

21

22

| | |
|---|---|
| UNITED FINANCIAL CASUALTY COMPANY, | CASE NO. C19-5658JLR |
| Plaintiff, | ORDER GRANTING THIRD-PARTY DEFENDANT NICHOLSON'S MOTION FOR SUMMARY JUDGMENT |
| v. | |
| CHRISTENSEN INC., GENERAL CONTRACTOR, et al., | |
| Defendants/Third-Party Plaintiffs, | |
| v. | |
| WESTERN NATIONAL ASSURANCE GROUP, et al., | |
| Third-Party Defendants. | |

**I. INTRODUCTION**

Before the court is Third-Party Defendant Nicholson & Associates, LLC's

("Nicholson") motion for summary judgment.  (MSJ (Dkt. # 59); *see also* Reply (Dkt.

# 65).)  Third-Party Plaintiff Christensen Inc., General Contractor ("CIGC") opposes the

motion.  (Resp. (Dkt. # 61).)  The court has considered the motions, the parties'

submissions in support of and in opposition to the motions, and the applicable law.

Being fully advised,[1] the court GRANTS Nicholson's motion for summary judgment.

## II. BACKGROUND

**A.    Factual Background**

CIGC is a general contractor that owns a number of vehicles and trailers and

employs one driver, Defendant John R. Clark, with a commercial driver's license.

(Christensen Decl. (Dkt. # 63) ¶ 2.)  In June 2015, CIGC began obtaining commercial

insurance coverages through Nicholson, an insurance broker.  (Houk Decl. (Dkt. # 59-1)

¶ 3.)  At that time, Nicholson obtained a package for CIGC with Third-Party Defendant

Western National Assurance Group ("Western National") that provided several

coverages, including commercial auto and commercial general liability.  (*Id*. ¶¶ 3-4, Ex.

1.)  The policy ran from June 15, 2015, to June 15, 2016.  (*Id*.)

In August 2015, Western National informed Nicholson that Mr. Clark's driver's

license had been suspended and that Western National would cancel CIGC's policy if Mr.

Clark was not excluded from coverages.  (*Id*. ¶ 5, Ex. 2.)  CIGC opted to exclude Mr.

---

[1] CIGC requests oral argument.  (Resp. at 1.)  Oral argument is not necessary where the non-moving party suffers no prejudice.  *See Houston v. Bryan*, 725 F.2d 516, 517-18 (9th Cir. 1984).  "When a party has an adequate opportunity to provide the trial court with evidence and a memorandum of law, there is no prejudice [in refusing to grant oral argument]."  *Partridge v. Reich*, 141 F.3d 920, 926 (9th Cir. 1998) (quoting *Lake at Las Vegas Investors Grp., Inc. v. Pac. Malibu Dev. Corp*., 933 F.2d 724, 729 (9th Cir. 1991)) (alterations in original).  Here, oral argument would not be of assistance to the court.  *See* Local Rules W.D. Wash. LCR 7(b)(4).  Accordingly, the court denies CIGC's request for oral argument.

1    Clark from the policy.  (Karpavicius Decl. (Dkt. # 59-3) ¶ 5.)  On November 17, 2015,

2    CIGC informed Nicholson that Mr. Clark's license had been reinstated and asked to get

3    him back on the Western National policy.  (*Id.* ¶ 6, Ex. D.)  On December 23, 2015,

4    Nicholson sent a letter to Western National seeking to have Mr. Clark's exclusion

5    removed from the policy.  (*Id.* ¶ 8, Ex. E.)  Western National refused to reconsider the

6    exclusion of Mr. Clark from the policy.  (*Id.*)

7        After Western National's refusal, CIGC and Nicholson discussed CIGC's options

8    moving forward.  The parties disagree on the exact nature of this discussion.  Nicholson

9    claims that CIGC asked for insurance that would cover Mr. Clark driving CIGC's 2003

10   GMC dump truck.  (Houk Decl. ¶ 9; Karpavicius Decl. ¶ 9.)  Nicholson specifically

11   contends that CIGC never requested that the insurance cover Mr. Clark if he were driving

12   his personal vehicle, or using that personal vehicle to pull a CIGC trailer.  (Karpavicius

13   Decl. ¶ 9.)  CIGC states that the discussion with Nicholson covered "the need to have Mr.

14   Clark be able to drive the one large truck owned by CIGC that requires a commercial

15   driver to operate when pulling a trailer."  (Christensen Decl. ¶ 3 (explaining that a

16   commercial driver's license is only required to drive the 2003 GMC if it is pulling a

17   trailer).)  Specifically, CIGC claims that "[w]hile the main purpose of the insurance was

18   to allow Mr. Clark to drive the 2003 GMC," they instructed Nicholson to "obtain

19   insurance that replaced the Western National policy from which Mr. Clark was

20   excluded."  (*Id.* ¶ 4.)  Since the Western National policy covered CIGC's trailers, CIGC

21   believed that the replacement policy it requested Nicholson to procure would cover

22

1   trailers pulled by Mr. Clark while driving any vehicle, in addition to the 2003 GMC.  (*See*

2   *id.* ¶¶ 4-6.)

3          After this discussion, Nicholson obtained two quotes for policies that would cover

4   Mr. Clark driving the 2003 GMC.  (Houk Decl. ¶ 9.)  Kemper Specialty quoted coverage

5   at $3,700, and Plaintiff United Financial Casualty Company ("UFCC") quoted coverage

6   at $2,729.  (*Id.*)  On January 15, 2016, CIGC instructed Nicholson:  "OK, let's go with

7   the cheapest one."  (*Id.* ¶ 10, Ex. 5.)  Nicholson then obtained the UFCC policy for

8   CIGC, effective from January 18, 2016, to January 18, 2017.  (*Id.*, Ex. 6.)

9          On March 15, 2016, CIGC emailed Nicholson to ask about suspending the UFCC

10  policy because Mr. Clark "is unable to drive the truck for at least a month."  (Houk Decl.

11  ¶ 11, Ex. 7.)  Nicholson responded by asking if CIGC wanted to keep only the

12  comprehensive coverage on the 2003 GMC until Mr. Clark could drive again.  (*Id.*)

13  CIGC responded via email stating:

14          There is some confusion, I believe. The truck CAN be driven, just not by
            [Mr. Clark] or hauling a trailer.  We don't want to suspend the coverage for
15          the truck, just the ability for [Mr. Clark] to drive it, as HE can't.

16  (*Id.*)  The following day, CIGC instructed Nicholson to keep the UFCC policy in place.

17  (*Id.*)

18          On April 20, 2016, Mr. Clark was driving his personal truck with a CIGC-owned

19  trailer attached when he rear-ended a car driven by Leeta Ireland.  (Hughes Decl. (Dkt.

20  # 59-4) ¶ 3, Ex. B; Resp. at 2.)  CIGC did not inform Nicholson of the collision after it

21  occurred.  (Houk Decl. ¶ 12; Karpavicius Decl. ¶ 12.)  On June 8, 2016, Nicholson

22  followed up on the March, 2016, conversation regarding suspending coverage and asked

ORDER - 4

1   CIGC what they wanted to do regarding the UFCC policy.  (Karpavicius Decl. ¶ 13.)

2   CIGC responded that Mr. Clark had not driven in months and asked Nicholson to cancel

3   the policy, which Nicholson did that day.  (*Id.*)

4        On December 5, 2016, UFCC sent a letter to CIGC denying a defense and

5   indemnity for any claims arising out of the collision.  (Hughes Decl. ¶ 3, Ex. C.)  On

6   December 16, 2016, Western National also denied coverage for the accident.  (*Id.* ¶ 4,

7   Ex. D.)  In October 2018, Ms. Ireland's auto carrier sued CIGC in a subrogation action in

8   Mason County District Court.[2]  (*See* Compl. (Dkt. # 1) ¶¶ 23-28.)  In April 2019, Ms.

9   Ireland filed a personal injury action against CIGC in Pierce County Superior Court.  (*Id.*

10  ¶¶ 29-32.)  CIGC did not notify Nicholson of either lawsuit.  (*See* Houk Decl. ¶ 14;

11  Karpavicius Decl. ¶ 14.)  On July 18, 2019, UFCC filed this declaratory judgment action.

12  (*See* Compl.)  CIGC did not notify Nicholson of this action either.  (Houk Decl. ¶ 14;

13  Karpavicius Decl. ¶ 14.)  CIGC now brings claims of negligence and breach of contract

14  against Nicholson.  (*See* 2d. Am. Answer (Dkt. # 58) ¶¶ 3.7-3.8.)

15  **B.    Procedural History and Previous Orders**

16       Ms. Ireland initiated the underlying litigation in state court against CIGC and Mr.

17  Clark in April of 2019.  *See Ireland v. Christensen, Inc., General Contractor, et al.*,

18  Pierce County Superior Court Cause No. 19-2-07069-8.1.  UFCC agreed to provide

19  defense under a reservation of rights, and on July 18, 2019, brought this action seeking

20  declaratory relief stating that UFCC did not owe any coverage under its policy with

21

22       [2] This action is no longer at issue, as it was dismissed upon Ms. Ireland's filing of the
     underlying lawsuit in Pierce County.  (*See* 7/21/20 Order (Dkt. # 47) at 1 n.1.)

CIGC.  (*See generally* Compl.)  On May 27, 2020, CIGC amended its answer to include as Third-Party Defendants Nicholson and Western National.  (*See* Am. Answer (Dkt. # 43).)

On July 21, 2020, Judge Ronald B. Leighton granted UFCC's motion for summary judgment and found that UFCC had no indemnification or defense obligations to CIGC or Mr. Clark under its policy in the underlying lawsuit filed by Ms. Ireland.  (7/21/20 Order at 7.)  In granting UFCC's motion for summary judgment, the court found that:

> [T]here is no evidence of a representation [by Nicholson] that Clark was covered when pulling a trailer using *any* vehicle at all.  In fact, according to Kevin Christensen's declaration, "Nicholson selected the coverage and told [CIGC] to not allow Mr. Cark to drive vehicles other than the 2003 GMC."  The emails between [CIGC] and Nicholson also do not represent that Clark was covered while pulling trailers with his personal vehicle . . . .  At no point does Nicholson make any representations about Clark's unconditional coverage when pulling a trailer.  Indeed, these emails reinforce the idea that the UFCC Policy only covers Clark while driving the 2003 GMC.

(7/21/20 Order at 6-7 (emphasis in original) (citations omitted).)  When CIGC moved for reconsideration (MFR (Dkt. # 48)), the court addressed CIGC's argument that the court erred by inferring that Nicholson did not make binding representations that the policy with UFCC covered Mr. Clark while pulling the trailer using any vehicle:

> The Court is unpersuaded.  [CIGC] attempts to insert ambiguity into an email conversation with Nicholson about whether to suspend the UFCC policy in light of Clark's inability to drive the covered truck, but [CIGC]'s interpretation of that conversation is simply not reasonable.
>
> . . . [CIGC] never suggested that the UFCC policy covered [Mr.] Clark while driving any vehicle at all and Nicholson never represented this in the email exchange or elsewhere.

//

ORDER - 6

1    (8/5/20 Order (Dkt. # 52) at 2.)  On August 8, 2020, Nicholson filed its answer to CIGC's

2    claims against it.  (Nicholson Answer (Dkt. # 53).)  On October 29, 2020, Nicholson filed

3    the instant motion for summary judgment.  (*See* MSJ.)

4                                    **III. ANALYSIS**

5            Nicholson moves for summary judgment on the claims against it, arguing:  1)

6    CIGC cannot satisfy the elements of a contract claim (MSJ at 20-23); 2) CIGC's

7    negligence claim fails as a matter of law (*id.* at 14-20); and 3) CIGC's claims against

8    Nicholson are barred by the statute of limitations (*id.* at 12-14).  The court first addresses

9    the relevant legal standard before analyzing Nicholson's first two arguments.[3]

10   **A.      Legal Standard**

11           Summary judgment is appropriate if the evidence viewed in the light most

12   favorable to the non-moving party shows "that there is no genuine dispute as to any

13   material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P.

14   56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Beaver v. Tarsadia Hotels*,

15   816 F.3d 1170, 1177 (9th Cir. 2016).  A fact is "material" if it might affect the outcome

16   of the case.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A factual dispute

17

18           [3] Washington courts do not appear to have addressed the issue of when the statute of
     limitations is triggered for claims against an insurance broker if the insurance provider denies
19   coverage but defends the policy holder in the underlying lawsuits subject to a reservation of
     rights.  (*See* MSJ at 13 ("This issue has not been directly addressed in this state."); Resp. at 5
     (citing no case law); *see also Gazija v. Nichols Jerns Co.*, 543 P.2d 338, 343 (Wash. 1975)
20   (finding that statute of limitations commenced for claims against insurance agent when coverage
     was denied, but not in a case involving defense with reservation of rights).)  As the court
21   determines that Nicholson should be awarded summary judgment on CIGC's negligence and
     breach of contract claims on other grounds (*see infra* §§ III.B-C), it declines to analyze the
22   question of whether the statute of limitations has run for these claims.

1    is "'genuine' only if there is sufficient evidence for a reasonable fact finder to find for the

2    non-moving party." *Far Out Prods., Inc. v. Oskar*, 247 F.3d 986, 992 (9th Cir. 2001)

3    (citing *Anderson*, 477 U.S. at 248-49).

4        The moving party bears the initial burden of showing there is no genuine dispute

5    of material fact and that it is entitled to prevail as a matter of law. *Celotex*, 477 U.S. at

6    323. If the moving party does not bear the ultimate burden of persuasion at trial, it can

7    show the absence of such a dispute in two ways: (1) by producing evidence negating an

8    essential element of the nonmoving party's case, or (2) by showing that the nonmoving

9    party lacks evidence of an essential element of its claim or defense. *Nissan Fire &*

10   *Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1106 (9th Cir. 2000). If the moving party

11   meets its burden of production, the burden then shifts to the nonmoving party to identify

12   specific facts from which a factfinder could reasonably find in the nonmoving party's

13   favor. *Celotex*, 477 U.S. at 324; *Anderson*, 477 U.S. at 250.

14   **B.    Breach of Contract Claim**

15       Nicholson contends that there can be no breach of a contract between Nicholson

16   and CIGC regarding coverage of the accident because "there was no mutual intention to

17   provide [CIGC] coverage when Clark was driving his own truck." (MSJ at 23.) In

18   response, CIGC asserts that there was a "clearly enforceable contract with no missing

19   terms."[4] (Resp. at 8.) The court agrees with Nicholson.

20

21       [4] Indeed, CIGC appears to believe the existence of an enforceable contract is so clear that
     it did not need to provide any citations to case law or the record. (*See* Resp. at 8 (failing

22   repeatedly to replace "CITE" with actual citations to the record).) CIGC should remain mindful
     that "[j]udges are not like pigs, hunting for truffles buried in briefs." *Indep. Towers of Wash. v.*

1    "Washington adheres to the objective manifestation theory of contracts, which

2    imputes to a person an intention corresponding to the reasonable meaning of his words

3    and acts." *American States Ins. Co. v. Breesnee*, 745 P.2d 518, 521 (Wash. Ct. App.

4    1987) (citing *Dwelley v. Chesterfield*, 560 P.2d 353 (Wash. 1977)).  Importantly, "[t]he

5    unexpressed intention of one party is meaningless as to the mutual intention of the

6    parties." (*Id.*)

7        In its previous ruling on UFCC's motion for summary judgment, the court found

8    that Nicholson "[a]t no point . . . [made] representations about Clark's unconditional

9    coverage when pulling a trailer."  (7/21/20 Order at 6-7.)  Further, "[the emails between

10   Nicholson and CIGC] reinforce the idea that the UFCC Policy only covers Clark while

11   driving the 2003 GMC."  (*Id.*; *see also* 8/5/20 Order at 2 ("[CIGC] never suggested that

12   the UFCC policy covered Clark while driving any vehicle at all and Nicholson never

13   represented this in the email exchange or elsewhere.").)  CIGC presents no evidence that

14   refutes these previous findings.  (*See* Resp. at 8.)  In the absence of such a showing, there

15   is no genuine dispute of material fact as to whether there was mutual intention for a

16   contract to obtain insurance that would have covered Mr. Clark's accident.  Thus, the

17   court grants Nicholson's motion for summary judgment on CIGC's contract claim.

18   **C.    Negligence Claim**

19       For the same underlying reasons that there is no genuine dispute of material fact as

20   to the question of mutual intent to form a contract, Nicholson cannot be said to have

21   _____

22   *Washington*, 350 F.3d 925, 929 (9th Cir. 2003) (quoting *United States v. Dunkel*, 927 F.2d 955,
     956 (7th Cir. 1991)) (internal quotation marks omitted).

1    breached its duty to follow CIGC's instructions.  Nicholson argues that CIGC cannot

2    satisfy the elements of negligence because there is no evidence that CIGC instructed

3    Nicholson to procure insurance that would cover Mr. Clark driving his personal truck

4    while towing a CIGC-owned trailer.[5]  (MSJ at 19; Reply at 4-5.)  CIGC contends that it

5    instructed Nicholson to obtain a policy to cover Mr. Clark that would replace the Western

6    National policy. (Resp. at 2.)  Since the Western National policy "provided protection for

7    Mr. Clark to drive CIGC vehicles and specifically listed CIGC's trailers, CIGC maintains

8    this instruction should have led Nicholson to obtain a policy that covered Mr. Clark when

9    driving a personal vehicle towing a CIGC trailer.  (Resp. at 5-6.)

10            To recover against an insurance agent under a negligence theory, a plaintiff must

11   prove:  (1) that the agent had a duty of care to protect the plaintiff against a certain risk,

12   (2) a breach of that duty, (3) that the breach was the proximate cause, (4) of the plaintiff's

13   damages.  *Peterson v. Big Bend Ins. Agency*, 202 P.3d 372, 377 (Wash. Ct. App. 2009).

14   Insurance agents' duties include an obligation to exercise good faith and carry out

15   instructions.  *AASDMP Mgmt. L.P v. Acordia Nw., Inc.*, 63 P.3d 860, 863 (Wash. App.

16   Ct. 2003).  Washington law requires that insureds have a duty to instruct insurance agents

17   in a manner that is "clear, explicit, and positive."  *Breesnee*, 745 P.2d at 522 (citation

18   omitted).  If these instructions "are ambiguous or obscure, and will bear different

19   interpretations, the agent is justified in acting in good faith upon one of the two

20   reasonable constructions."  *Id*.

21

22   _____

       [5] Nicholson also argues that CIGC cannot establish causation.  (MSJ at 19-21.)  Because
     the court finds that Nicholson did not violate a duty to CIGC, it does not address this argument.

Here, there is no evidence that supports a finding that CIGC clearly, explicitly, and positively instructed Nicholson to obtain insurance that would cover an incident where Mr. Clark was driving a personal vehicle while towing a CIGC trailer. As the court previously found, "[CIGC] never suggested that the UFCC policy covered Clark while driving any vehicle at all and Nicholson never represented this in the email exchange or elsewhere." (8/5/20 Order at 2.) Moreover, Mr. Christensen testified that when he instructed Nicholson "to obtain insurance that replaced the Western National policy from which Mr. Clark was excluded," the "main purpose of the insurance was to allow Mr. Clark to drive the 2003 GMC." (Christensen Decl. ¶ 4.) Even when viewed in the light most favorable to CIGC, the evidence suggests that, at best, CIGC's instructions were ambiguous. CIGC offers no evidence or arguments that Nicholson acted in bad faith in resolving this ambiguity. (*See generally* Resp.) Therefore, the court grants Nicholson's motion for summary judgment on CIGC's negligence claims.

## IV. CONCLUSION

For the reasons set forth above, the court GRANTS Nicholson's motion for summary judgment (Dkt. # 59) and DISMISSES CIGC's negligence and breach of contract claims against Nicholson with prejudice.

Dated this 14th day of December, 2020.

JAMES L. ROBART
United States District Judge